U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 1 2 2016

TONY R. MOORE, CLERK
BY: _____
        DEPUTY

d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MITCHELL BAYONNE, Plaintiff | CIVIL ACTION NO. 1:15-CV-00099 |
| VERSUS | CHIEF JUDGE DRELL |
| CITY OF NATCHITOCHES, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are: (1) a Motion for Summary Judgment (Doc. 37) filed by Defendants Deputy Derrick Caballero ("Caballero") and Sherriff Victor Jones, Jr. ("Sheriff Jones"), and; (2) a Motion to Dismiss and for Summary Judgment (Doc. 40) filed by the City of Natchitoches (the "City"). Defendants submit affidavits and deposition testimony – including Plaintiff's deposition – in support of both motions. Plaintiff, Mitchell Bayonne ("Bayonne"), fails to oppose either motion, and submits no evidence in support of his claims.

Because Defendants have established Bayonne's claims are without factual or legal basis, and because Bayonne has failed to raise a genuine issue of material fact regarding any of his claims, summary judgment is warranted.

I. **Background**

Bayonne alleges that, on the afternoon of January 17, 2014, he was arrested inside his residence in Natchitoches, Louisiana. During the arrest, Bayonne claims

1

Caballero "and other officers" struck him with "among other things, a gun and an elbow and took [him] violently to the ground." (Doc. 1, p. 3).

Bayonne's original and first amended complaints are notably unclear.[1] The pleadings contain lengthy phrases which may (or may not) actually state various claims, such as the following: "After the above-described unconstitutional, unlawful, and unreasonable detention, seizure, assault, and batter of Mitchell Bayonne . . . [Defendants] failed to request any/any appropriate medical care for Mr. Bayonne and failed to provide any/any appropriate medical care for Mr. Bayonne." (Doc. 16, p. 4). Notwithstanding these phrases, the pleadings contain two enumerated causes of action: (1) violations of Bayonne's "constitutional rights to due process, to be free from cruel and unusual punishment, to be free from unjust and unreasonable seizure and detention, and to be free from the excessive use of force, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1988, and Louisiana Constitution, article 1, §§ 2, 5," (Doc. 1, p. 5); and (2) claims for vicarious liability against the City, Sheriff Jones, and the NPSO (Doc. 1, p. 6).

Defendants show Bayonne was arrested by officers of the Natchitoches Multi-Jurisdictional Drug Task Force (the "Task Force") after the Task Force received information that Bayonne was selling narcotics from his home. Bayonne had a significant and well-known criminal history which included substantial narcotics activity. Defendants maintain that the Task Force was executing a valid "no-knock"

---

[1] Bayonne was formerly represented by counsel. His attorney withdrew on January 19, 2016, well after filing the original and first amended complaints. Bayonne is now proceeding pro se.

2

search warrant when Bayonne was arrested; any force used during the arrest was reasonable under the circumstances; and Bayonne's remaining claims (including a claim for failure to provide medical care and various state law tort claims) are either barred by law or unsupported by the evidence.

## II. Law and Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts. Because Bayonne failed to dispute the facts offered by Defendants in their statements, those facts are deemed admitted for purposes of the pending motions.

3

Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

### B. All claims against Caballero should be dismissed.

#### 1. Caballero is entitled to qualified immunity.

A court must consider qualified immunity under the following familiar standards:

> Law enforcement officers are entitled to qualified immunity for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Courts must determine whether a constitutional right was violated and whether the allegedly violated right was clearly established.

Mendez v. Poitevent, 823 F.3d 326, 331 (5th Cir. 2016) (internal citations and quotations omitted). A court must judge a defendant's actions by a standard of objective reasonableness. See Gonzalez v. Huerta, 15-20212, 2016 WL 3457258, at *1 (5th Cir. June 23, 2016).[3]

Moreover, once a defendant asserts qualified immunity in good faith, the burden of proof on summary judgment shifts to the plaintiff. King v. Handorf, 821 F.3d 650, 653–54 (5th Cir. 2016). The plaintiff must offer "more than mere

---

[3] The same standard of objective reasonableness applies to Bayonne's claims under Louisiana law. Winston v. City of Shreveport, 390 Fed.Appx. 379, 386 (5th Cir. 2010).

4

allegations" – although not necessarily "absolute proof" – to rebut the defense of qualified immunity. Id. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." See Gonzalez, 2016 WL 3457258 at *1 (quoting Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011)). Making this demonstration is a "demanding standard." Mendez, 823 F.3d at 331.

In this case, Caballero has raised the defense of qualified immunity in good faith. Caballero claims that the only time he touched Bayonne during the arrest was at Bayonne's residence when Caballero pushed Bayonne's hair aside to examine a small cut on his head. Caballero denies using any force against Bayonne during the arrest, and therefore, maintains that could not have violated Bayonne's constitutional rights by using excessive force.

Bayonne claims that, when the Task Force arrived at his home and began knocking on his door, Bayonne attempted to open the door and yelled to the officers he was trying to do so. According to Bayonne, the officers kicked in his door, apparently because they did not hear him. Bayonne claims that, before the Task Force officers kicked in his door, he kneeled in the middle of the floor, put his hands behind his head, and offered no resistance. Nonetheless, Bayonne claims officers stormed into his residence, slammed him against a bookshelf, twisted his arm, kicked him, and hit him in the back of the head, possibly with a pistol. Bayonne speculated

– and later recanted – that Jayson Linebaugh ("Linebaugh"), another Task Force officer, may have hit him in the back of the head.

Defendants dispute several of these assertions. Defendants claim that Bayonne was standing up near an open cabinet and shelf when they entered the home, and that Bayonne resisted arrest. According to Defendants, Bayonne refused to get on the ground, so they had to take him down. Defendants also claim Bayonne resisted once on the ground, refusing to place his hands behind his back to be cuffed. Defendants deny anyone struck, kicked, or threw Bayonne against anything.

On face, these factual disputes may be sufficient to preclude summary judgment. But none of these factual disputes involve Caballero.[4] Bayonne's deposition – which Defendants submitted – is the only evidence before the Court of Bayonne's position. During his deposition, Bayonne repeatedly declined to state that Caballero hit him, twisted his arm, threw him against a bookshelf, or otherwise "beat him up." While Bayonne states Caballero helped cuffed him, Bayonne never indicates that Caballero used excessive force in doing so.

---

[4] At one point during his deposition, Bayonne testified that he was sure Linebaugh hit him. (Doc. 37-4, p. 28). The City correctly points out, however, that after further questioning, Bayonne stated he really did not know who hit him, threw him against the bookshelf, or twisted his arm. (Id., pp. 50-51, 77-78). Rather, he testified there were a lot of officers present, and the house was small, which made it difficult for him to see who allegedly touched him. (Id., p. 74). The Court need not decide whether this testimony would raise a genuine issue of material fact regarding Linebaugh or any other officer, because neither Linebaugh nor any other officer is a named defendant. But the Court does observe the vagaries and general inconsistencies in Bayonne's testimony.

6

There is no genuine issue of material fact regarding Bayonne's generalized claims under § 1983. Caballero is entitled to qualified immunity regarding these claims.

### 2. Caballero is entitled to summary judgment regarding Bayonne's remaining claims.

Although his pleadings are unclear, Bayonne seems to assert a litany of additional claims against Defendants, including negligence; assault and battery; unlawful detention; intentional infliction of emotional distress; and denial of medical care. Bayonne's allegations are conclusory. And Bayonne offers no evidence that Caballero was involved in any meaningful way with these additional claims.

#### a. Negligence and assault and battery.

Because Bayonne did not testify Caballero used force against him – and because Caballero denied as much in his affidavit – Caballero cannot be held liable for Bayonne's claims of negligence or assault and battery.

#### b. "Unlawful detention."

It is well-settled that "a warrant to search a residence implies the limited authority to detain occupants of the residence while the search is being conducted." United States v. Cavazos, 288 F.3d 706, 711 (5th Cir. 2002). Bayonne agreed that the Task Force was executing a valid search warrant, entered his home legally, found drugs in his home (which he denies were his), and obtained drugs from him in nearby woods (which he admits were his for use and sale). (Doc. 37-4, pp. 19-20, 52-53, 55).

Bayonne's initial detention while the Task Force executed the search warrant was plainly lawful. And while searching his residence, Task Force officers discovered

7

ample evidence to justify Bayonne's subsequent arrest. Bayonne offers no evidence or argument to the contrary. His "unlawful detention" claim is therefore baseless.

### c. Intentional infliction of emotional distress.

"'[T]o recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" Simmons v. State, Dep't of Children & Family Servs., 2015-0034 (La. App. 4 Cir. 6/24/15, 5–6); 171 So.3d 1147, 1151. The defendant's conduct must be so outrageous and extreme that it is "utterly intolerable in a civilized community." Elphage v. Gautreaux, 969 F.Supp.2d 493, 516 (M.D. La. 2013)

Bayonne offers no evidence that Caballero acted "outrageously," or with a desire or substantial certainty that his conduct would cause Bayonne severe emotional distress. Bayonne also offers no evidence that he, in fact, suffered "severe" emotional distress. This claim is without merit.

### d. Denial of medical care.

Bayonne claims he was denied "any/any adequate" medical care following his arrest.[5] At his deposition, Bayonne testified that "EMS" was not called to the scene,

---

[5] The Court can only presume that this is the factual basis for Bayonne's Eight Amendment and Due Process claims – once again, his pleadings do not make this clear. However, as an arrestee rather than a convicted prisoner, Bayonne's right to receive medical care is guaranteed by the Fourteenth, and not the Eighth, Amendment. See Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996).

8

and that "they" – presumably the Task Force officers – did not offer to call EMS. In his affidavit, however, Caballero states he offered to call an ambulance several times, but Bayonne refused each time. It is undisputed, however, that Caballero looked at the small cut on Bayonne's forehead, and that Bayonne saw the nurse as soon as he arrived at the detention facility. The only remaining question, then, is whether the alleged failure to call an ambulance to the arrest site constitutes a genuine issue of material fact regarding a violation of Bayonne's constitutional rights.

"'[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Hines v. Henson, 293 Fed.Appx. 261, 263 (5th Cir. 2008) (quoting Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001). Further, "[t]o show that the right to medical care has been violated, a plaintiff must establish that 'the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference.'" Hines, 293 Fed.Appx at 263 (quoting Hare, 74 F.3d at 650). Negligence is insufficient to establish "deliberate indifference." See Hare, 74 F.3d at 650.

Here, Bayonne fails to raise a genuine issue of material fact that Caballero – or anyone else – acted with deliberate indifference. Even accepting Bayonne's version of events as true – that Caballero examined the small cut on Bayonne's forehead but did not call an ambulance – the Court could only find, at worst, that Caballero acted negligently. Without treatment in an ambulance, Bayonne voluntarily spent several

9

hours with Task Force officers, leading them to a stash of his own narcotics as well as several other areas with purported narcotics activity.

Bayonne's treatment at the detention center further evidences apparent, but relatively minor, injuries. Medical records show he was given an ice pack and ibuprofen. There is no evidence that Bayonne's injuries – a small cut on his forehead and the back of his head, a bruise on his elbow, and bleeding from his mouth – presented a "substantial risk of serious harm" to Bayonne. Much more importantly, there is also no evidence that Caballero subjectively ignored any such risk to Bayonne, even if it existed. Bayonne's Due Process claim fails.

### C. All claims against Sheriff Jones should be dismissed.

Bayonne alleges Sheriff Jones should be vicariously and, the Court can only assume, personally liable for the alleged torts of the Task Force officers. The Court must also assume Sheriff Jones has been sued in both his individual and official capacities, as Bayonne never clarifies this point.

""Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. A supervisor may be liable if he is personally involved in the constitutional violation or there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Hodges v. Frasier, 176 F.3d 479 (5th Cir. 1999) (quoting Thompkins v. Belt, 828 F .2d 298, 303-04 (5th Cir. 1987)).

Bayonne has offered no evidence – or even a non-conclusory allegation – that Sheriff Jones was personally responsible for any constitutional violation, or that there

10

is any connection between action by Sheriff Jones and any constitutional violation. Sheriff Jones submitted an affidavit confirming that all deputies undergo orientation and training regarding warrants, arrest procedures, ethics, and statutory law. (Doc. 37-5). Sheriff Jones also stated that he did not approve or condone unlawful arrests, disregarding arrestees' medical needs, or using excessive force. There is no evidence to contradict Sheriff Jones's testimony. Accordingly, Sheriff Jones cannot be held liable for Bayonne's claims under § 1983.

Bayonne's claims under Louisiana law require a different analysis.[6] Under La. Civ. Code art. 2320, a sheriff may be held liable for torts committed by employees "in the exercise of the functions in which they are employed." Therefore, if a Louisiana tort was committed by a deputy, a plaintiff may establish vicarious liability against a sheriff if, considering a number of factors, the tort "was sufficiently employment-related that vicarious liability should attach." Nagle v. Gusman, 61 F.Supp.3d 609, 626 (E.D. La. 2014).

As explained above, however, there is no genuine issue of material fact regarding Bayonne's claims against Caballero under Louisiana law. Because

---

[6] The Court presumes that Bayonne seeks to recover against Sheriff Jones in his official capacity under Louisiana law. See Burge v. Par. of St. Tammany, 187 F.3d 452, 469–70 (5th Cir. 1999) ("In a suit under Louisiana tort law against a sheriff, seeking to hold him vicariously liable for the tort of his employee or deputy, and not because of the sheriff's own negligence, the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff.").

11

Caballero has established his entitlement to summary judgment as to those claims, Bayonne's vicarious liability claim against Sheriff Jones should be dismissed as well.[7]

### D. All claims against the City should be dismissed.

Bayonne attempts to hold the City liable: (1) vicariously, for the actions of the Task Force officers; and (2) directly, for failing to implement lawful policies which would have prevented the alleged violations against Bayonne.

#### 1. The City may not be held vicariously liable for Bayonne's claims

Under § 1983, "[a] municipality may not be subject to liability merely for employing a tortfeasor." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 167 (5th Cir. 2010). Accordingly, the City may not be held vicariously liable for any of Bayonne's § 1983 claims.

#### 2. The City may not be held directly liable because Bayonne has failed to identify a City policy or custom which caused his alleged injuries.

"[A] municipality is liable under § 1983 only if its 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A plaintiff may establish

---

[7] To the extent Bayonne intended to name the Natchitoches Parish Sheriff's Office as a defendant, his claims should be dismissed, because the NPSO is not a legal entity subject to suit. See, e.g., Walker v. Iberia Par. Sheriff Dep't, CIV.A. 06-2192, 2007 WL 2127706, at *1 (W.D. La. June 25, 2007) ("Louisiana law affords no legal status to the 'Parish Sheriff's Department' so that the department can sue or be sued, such status being reserved for the Sheriff.").

such a policy or custom by proving legislative action, by proving "an individual with final decisionmaking authority" acted, or by identifying the widespread practice of unofficial conduct which is so pervasive as to constitute municipal policy. See Deville, 567 F.3d at 170.

Bayonne has neither adequately alleged nor proven that the City had any such policy or custom. Bayonne's pleadings in this respect are vague and conclusory at best. Bayonne has offered no additional evidence to establish a municipal policy or custom. Bayonne's conclusory allegations against the City are insufficient to defeat the City's motions for summary judgment. See Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

E. **Bayonne's claims against the "Unknown Officers" should be dismissed.**

Finally, Bayonne named "Unknown Officers" as defendants. Bayonne filed suit on January 20, 2015. In more than 18 months, and after significant discovery, Bayonne has failed to identify and serve any additional officers.

Accordingly, under Fed. R. Civ. P. 41(b), the Court, on its own motion, should dismiss Bayonne's claims against the "Unknown Officers" for failure to prosecute. See Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993).

III. **Conclusion**

For the foregoing reasons,

IT IS HEREBY RECOMMENDED that the Motion for Summary Judgment (Doc. 37) filed by Defendants Deputy Derrick Caballero and Sherriff Victor Jones, Jr. be GRANTED, and that all claims against Defendants Deputy Derrick Caballero and Sherriff Victor Jones, Jr. be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss and for Summary Judgment (Doc. 40) filed by the City of Natchitoches be GRANTED, and that all claims against the City of Natchitoches be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that all claims against the "Sheriff's Office of Natchitoches Parish" and "Unknown Officers" be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 12ᵗʰ day of August, 2016.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge